UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: KWOK, <br> *Debtors* | BANKR. NO. 22-50073 (JAM) <br> *Chapter 11* |
| LAMP CAPITAL LLC, INFINITY TREASURY MANAGEMENT INC., <br> *Appellants*, <br> v. <br> LUC A. DESPINS, <br> *Ch. 11 Trustee-Appellee.* | ADV. PRO. NO. 23-5023 <br> CIVIL NO. 3:24-CV-217 (KAD) <br><br> MARCH 20, 2025 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Lamp Capital LLC ("Lamp Capital") and Infinity Treasury Management Inc. ("ITM") (collectively, "Appellants" or the "Lamp Entities") appeal from the order of the Bankruptcy Court granting Chapter 11 Trustee Luc A. Despins' ("Trustee" or "Appellee") Motion for Default Judgment and denying the Lamp Entities' Cross-Motion to Set Aside Default (collectively, the "Default Decision"). On the Motion for Default Judgment, the Bankruptcy Court entered judgment in the Trustee's favor on the First and Second Claims of his Complaint against the Lamp Entities in the underlying adversary proceeding. *See Luc A. Despins, Ch. 11 Trustee v. Lamp Capital LLC, et al.*, No. 23-ap-5023 (JAM) (Bankr. D. Conn. Feb. 1, 2024), ECF Nos. 63, 66.[1] For the reasons set forth below, the Default Decision is **AFFIRMED**.

---

[1] The underlying adversary proceeding arises in relation to the Chapter 11 Bankruptcy case of *In re: Ho Wan Kwok*, Bankr. No. 22-bk-50073 (JAM). Mr. Kwok is herein referred to as the Debtor.

**Facts and Procedural History**

The Court presumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant appeal.

<u>The Lamp Entities and the Contempt Order in the Main Case</u>[2]

Lamp Capital is a Delaware limited liability company formed in 2020. ITM—of which the Debtor's son, Qiang Guo, is the lone shareholder—is the sole member and nominal owner of Lamp Capital. Lamp Capital was managed by the Debtor's agents and funded exclusively by entities controlled by the Debtor. The Debtor utilized Lamp Capital to pay his expenses, including, *inter alia*, a $1 million retainer to Brown Rudnick LLP, the Debtor's initial bankruptcy counsel. Lamp Capital was included in the Debtor's List of 20 Largest Unsecured Creditors[3] and thus, has been on the service list in the Debtor's Chapter 11 Bankruptcy proceeding, *In re Kwok*, No. 22-bk-50073 (the "Main Case"), from the date it was filed.

On August 23, 2022, in the Main Case, Lamp Capital was served with a subpoena pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rule 2004 Subpoena") by personal service on its registered agent for service of process. On October 28, 2022, the Trustee filed a motion seeking an order holding Lamp Capital in civil contempt of court, due to its failure to respond to the Rule 2004 Subpoena. Lamp Capital did not respond to the Trustee's motion, nor did it appear at the ensuing hearing held in the Bankruptcy Court on November 30, 2022. On April 26, 2023, following Lamp Capital's failure to respond to the Bankruptcy Court's order to show cause or appear at a hearing thereon, the Bankruptcy Court entered an order holding Lamp Capital

---

[2] The following factual allegations are taken as true for purposes of the instant appeal. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) (when a defendant defaults, the well-pleaded allegations of a complaint are deemed to be admitted).

[3] The Debtor's largest unsecured creditor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has contested Lamp Capital's status as a purported creditor.

in contempt of court, imposing sanctions on Lamp Capital for the Trustee's related attorney's fees, and providing Lamp Capital with thirty days to purge itself of contempt (the "Contempt Order"). *See* Main Case, ECF No. 1709.

The Adversary Proceeding

On October 26, 2023, the Trustee filed the underlying Adversary Proceeding against, *inter alia*, Lamp Capital, principally alleging that Lamp Capital is the Debtor's alter ego and seeking turnover of Lamp Capital and its assets to the Debtor's Estate. On October 31, 2023, the Clerk of Court issued a summons which directed the Trustee to serve the Summons and Complaint on the Lamp Entities.[4] On November 9, 2023, the Trustee filed a certificate of service proving service of the Summons and Complaint on Lamp Capital and ITM within seven days after the issuance thereof. The Summons and Complaint were served on the Lamp Entities' respective registered agents for service of process, as well as at the Lamp Entities' shared New York address.[5] Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, the Lamp Entities' deadline to answer or otherwise respond to the Complaint was November 30, 2023. The Lamp Entities did not do so.

On December 8, 2023, the Trustee requested that the Clerk of Court enter a default against the Lamp Entities, and on December 14, 2023, the Clerk of Court entered such default against the Lamp Entities (the "Default Entry"). On December 26, 2023, the Trustee filed the instant Motion

---

[4] Initially, Lamp Capital's mailing address was listed as One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. Following two amendments to the Debtor's List of 20 Largest Unsecured Creditors, Lamp Capital's mailing address was listed as 667 Madison Avenue, New York, NY 10065. The Trustee asserts that Lamp Capital also maintained a business address at 162 E. 64th Street, New York, NY 10065, which it shared with ITM. *See* Appellee Br. at 8 (citing Appellants' App'x, ECF No. 19-1, at AA00085–AA00087). The Lamp Entities do not dispute that they shared a business address, and indeed, it is uncontroverted that the Lamp Entities were served at the 64th Street address.

[5] While the Trustee received a response from ITM's registered agent indicating that it was no longer active in Delaware at the time of service, it nevertheless remained ITM's registered agent at the time of service, and thus, ITM was properly served. *See* Del. Code Ann. tit. 8 § 132(b)(3) ("[e]very registered agent for a domestic corporation or a foreign corporation shall . . . [a]ccept service of process and other communications directed to the corporations for which it serves as registered agent and forward same to the corporation to which the service or communication is directed.").

for Default Judgment. On December 29, 2023, the Lamp Entities filed a Notice of Appearance in the Adversary Proceeding. On January 12, 2024, prior to their deadline to respond to the Trustee's Motion for Default Judgment, the Lamp Entities filed the instant Cross-Motion to Set Aside Default. On January 19, 2024, the Trustee filed a response to the Lamp Entities' Cross-Motion, as well as a reply in further support of its Motion for Default Judgment. On January 23, 2024, the Bankruptcy Court held a hearing on the pending motions.

<u>The Default Decision</u>

On February 1, 2024, the Bankruptcy Court issued the Default Decision, granting the Trustee's Motion for Default Judgment and denying the Lamp Entities' Cross-Motion to Set Aside Default.

In denying the Lamp Entities' Motion to Set Aside the Default, the Bankruptcy Court concluded that the Lamp Entities had not established "good cause" to do so. The Bankruptcy Court first found that the Lamp Entities had willfully defaulted because they were properly served with the Summons and Complaint, failed to respond, and that such failure was not due to circumstances outside their control. In addition, the Bankruptcy Court emphasized: (a) the Debtor's receipt of funds from Lamp Capital (*e.g.*, the $1 million retainer for legal fees to finance the bankruptcy filing); (b) the Lamp Entities' receipt of various motions, subpoenas, and pleadings in the Main Case; (c) Lamp Capital's failure to respond to the Contempt Order in the Main Case, or otherwise attempt to purge their contempt; and (d) Lamp Capital's admission that it was aware of the Chapter 11 cases and related adversary proceedings "through the grapevine." The Bankruptcy Court next determined that the Lamp Entities had not presented a meritorious defense to the Trustee's claims in the Adversary Proceeding. The Bankruptcy Court specifically rejected the Lamp Entities' arguments that: (1) the Complaint fails to state any alter ego claim under

4

Delaware law, or otherwise adequately allege "wrongful conduct" on the part of ITM; and (2) the Complaint is barred from recovery under *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) and the related doctrine of *in pari delicto*.[6] In rejecting the Lamp Entities' arguments, the Bankruptcy Court observed that the Lamp Entities put forward no issues of fact in defense of the claims and instead made only legal arguments which the Bankruptcy Court was permitted to address (and did address) in connection with a default judgment. The Bankruptcy Court further concluded that setting aside the default would cognizably prejudice the Trustee, principally due to Lamp Capital's ongoing contempt of court in the Main Case and its continued failure to purge itself thereof. Indeed, the Bankruptcy Court concluded that setting aside the default would reward the Lamp Entities' contempt and abuse of process by affording them a proceeding in which discovery would be taken up anew.

Having denied the Motion to Set Aside Default, the Bankruptcy Court further concluded that the entry of a default judgment in the Trustee's favor on his claims against the Lamp Entities was warranted "because the Trustee (i) properly served the Summons and Complaint and (ii) sets forth a *prima facie* case that Lamp Capital is the alter ego of the [] Debtor and/or Lamp Capital and/or its assets are equitably owned by the [] Debtor."

On February 1, 2024, the default judgment was entered. On February 15, 2024, the Lamp Entities filed the instant Notice of Appeal as to the Default Decision.

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States

---

[6] On appeal, the Lamp Entities do not challenge the Bankruptcy Court's rejection of their arguments under *Wagoner* or the *in pari delicto* doctrine. As such, the Court does not include any discussion of the Bankruptcy Court's decision regarding those arguments.

5

shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Margulies v. Hough (In re Margulies)*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also Stasko v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotations marks omitted). It is well-settled—and the parties do not dispute—that a Bankruptcy Court's denial of a motion to set aside entry of a default, as well as the default judgment itself, are reviewed for abuse of discretion. *See In re Orion HealthCorp, Inc.*, 95 F.4th 98, 101 (2d Cir. 2024).

**Discussion**

On appeal, the Lamp Entities challenge only the Bankruptcy Court's denial of the Motion to Set Aside Default. Specifically, they challenge the Bankruptcy Court's findings that: (1) their default was willful; (2) they failed to present a meritorious defense to the Trustee's alter ego claims; and (3) the Trustee would be prejudiced if the entry of default were set aside. In response,

the Trustee argues that the Bankruptcy Court, on the record below, was well within its discretion in declining to set aside the Default Entry. The Court agrees with the Trustee.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." "The entry of default is therefore not discretionary." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). However, after such default is entered, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Indeed, "it is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). The party moving to set aside the default bears the burden of establishing "good cause." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). And "[b]ecause Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." *Bricklayers*, 779 F.3d at 186 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)) (alterations omitted). "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Id.* (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). Courts consider the same factors when deciding whether to set aside a default judgment. *See Rouse v. Broadway & Cooper LLC*, No. 23-CV-7849 (RER), 2024 WL 4379070, at *4 (E.D.N.Y. Oct. 3, 2024).

The Lamp Entities challenge the Bankruptcy Court's assessment of each of the applicable factors and as such, the Court will address them in turn.[7]

Willfulness

The Bankruptcy Court found that the Lamp Entities had willfully defaulted, on the basis that they were served with the Summons and Complaint, failed to respond, and that such failure was not due to circumstances outside their control. The Lamp Entities contest that finding, principally citing a lack of evidence that they had actual notice that the Summons and Complaint had been filed before their time to respond to it had passed. The Lamp Entities further emphasize that their good faith conduct after they received actual notice is a far cry from the egregious behavior at issue in the cases cited by the Bankruptcy Court in support of the Default Decision. This Court is not persuaded. Indeed, these arguments ring hollow when considered in the context of the actual record before the Bankruptcy Court, as opposed to the record rewritten and/or mischaracterized by the Lamp Entities.

A willful default may be established where a "defendant defaulted deliberately," regardless of whether such deliberate default was in "bad faith." *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). Indeed, the Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless," but is instead "egregious and . . . *not satisfactorily explained*." *Bricklayers*, 779 F.3d at 186 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)) (emphasis added); *see also New York v. Green*,

---

[7] The Lamp Entities' emphasize that notwithstanding their overlapping factors, the standard for setting aside a default entry under Rule 55(c) is more lenient than Rule 60(b)'s standard for setting aside a default judgment. *See* Appellant Br. at 11. The Lamp Entities are correct, and the Bankruptcy Court acknowledged as much. But as correctly observed by the Bankruptcy Court, motions to set aside a default are not granted as a matter of course due to the less rigorous Rule 55(c) standard. And here, the Bankruptcy Court had "no doubt" that the Lamp Entities had willfully defaulted and failed to present any meritorious defenses, and that setting aside the Default Entry would cognizably prejudice the Trustee. Thus, under the more lenient standard as sought by the Lamp Entities, their arguments were found to be without merit.

420 F.3d 99, 108 (2d Cir. 2005) ("willfulness in the context of a judgment by default requires something more than mere negligence.") (internal quotations omitted). "The analysis of willfulness is concerned with the distinction between those defaults that are excusable and those that are not." *In re Bailey's Express, Inc.*, No. 18-AP-3008 (AMN), 2019 WL 4686560, at *3 (Bankr. D. Conn. Sept. 25, 2019).

Here, the Trustee submitted evidence that the Lamp Entities were both properly served with the Summons and Complaint via first class mail on their registered agents for service of process, and at their shared business address. The Lamp Entities do not contest this evidence nor dispute that the service upon them was legally sufficient. Proper service raises a presumption of adequate notice. *See In re Greenberg*, 526 B.R. 101, 105 (Bankr. E.D.N.Y. 2015) (affidavit of service "creates a presumption that [the summons and complaint] reached its destination in usual time and was actually received by the person to whom it was addressed") (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)); *see also In re FairPoint Commc'ns, Inc.*, 462 B.R. 75, 81 (Bankr. S.D.N.Y. 2012) ("[t]his presumption of receipt is very strong and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary . . . [e]vidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.") (internal quotation marks and citation omitted). Nor, either before the Bankruptcy Court or on appeal, do the Lamp Entities dispute that they failed to timely respond to the Complaint. Rather, the Lamp Entities principally assert that there is insufficient evidence that they received actual notice of the Complaint.[8] They rely on the fact that: (a) ITM's registered agent returned the Summons and Complaint to the Trustee as undeliverable; (b) Lamp Capital's

---

[8] The Lamp Entities argue that "[t]he Bankruptcy Court held, without citing any authority, that a defendant's actual notice of a lawsuit is not a relevant factor in determining whether a defendant's default was willful." This mischaracterizes the Default Decision, and in any event, the Bankruptcy Court specifically addressed—and rejected—the Lamp Entities' actual notice argument.

9

registered agent did not respond to the Trustee at all; and (c) the Lamp Entities were "defunct and/or non-operational" at the time of service. According to the Lamp Entities, the foregoing "raise[s] a legitimate factual dispute about when [they] first became aware of this lawsuit and thus whether their failure to timely respond to it was willful." The Court disagrees.

The Lamp Entities cannot assert a "legitimate factual dispute" as to actual notice without submitting *any* evidence whatsoever. *See In re FairPoint*, 462 B.R. at 81. They offered no evidence that Lamp Capital's registered agent failed to forward the Summons and Complaint, or that they did not receive the Complaint at their shared business address. Indeed, they completely ignore the uncontroverted fact that both entities were served at their shared business address. Moreover, the undersigned agrees with the Bankruptcy Court that the Lamp Entities did not and have not satisfactorily explained how or when they allegedly received actual notice. *See Bricklayers*, 779 F.3d at 186. On this issue, counsel for the Lamp Entities was at worst, intentionally vague, and at best, uninformed. The Lamp Entities cannot first create, and then exploit, this obfuscation of the factual issues. Regarding the Lamp Entities awareness of the Adversary Proceeding, they offered that counsel was hired by someone *believed to be* the Debtor's son, and that counsel had general knowledge of the Chapter 11 case and related adversary proceedings "through the grapevine." Again, a dubious assertion, and one supported only by the representations of counsel, which are not evidence. And in any event, the Court is skeptical of these representations given that, *inter alia*, Lamp Capital, as an identified unsecured creditor, has not disputed that it was served with pleadings, orders, and other filings in the Main Case from its outset. The Bankruptcy Court properly rejected any argument that there were factual disputes surrounding the question of whether the Lamp Entities had timely notice of the Adversary Proceeding, and the conclusion that they had such notice was not clearly erroneous.

The Lamp Entities additionally urge that their good faith conduct upon receiving actual notice of the Complaint is a "far cry from the far more egregious behavior found to be willful in the cases cited by the Bankruptcy Court," and precludes a finding of willfulness. In this argument, the Lamp Entities challenge the Bankruptcy Court's decision as based on legal error. In particular, the Lamp Entities cite their prompt retaining of counsel,[9] immediate request for additional time to respond to the Complaint, and swift motion to set aside the default, as evidence that they did not commit bad faith, egregious, or deliberate conduct as contemplated in the case law. The Lamp Entities' protestations to the contrary notwithstanding, the Court is not persuaded. Because once again, as with the claim that the Lamp Entities lacked timely notice, there "is no factual material supporting any of these assertions other than representations of counsel." *See* Default Decision at 13. Indeed, these arguments presuppose that the record supports a finding that the Lamp Entities did not receive timely notice of the Adversary Proceeding. As discussed above, that assertion is belied by the record, and the Lamp Entities simply attempt to create a record where none exists. Upon review, the Court agrees with the Bankruptcy Court that the Lamp Entities' failure to timely respond to the Complaint is better-viewed as a continuation of Lamp Capital's contemptuous disregard for the broader bankruptcy proceedings, which itself is evidence of the Lamp Entities' willful and deliberate default.[10]

---

[9] The Court cannot reconcile the Lamp Entities' claim that they promptly sought counsel upon receiving actual notice of the Adversary Proceeding, with the Lamp Entities' separate claim by their counsel that he became aware of the Adversary Proceeding "through the grapevine" after he was hired by the Debtor's son (who is the sole shareholder of ITM).

[10] The Lamp Entities repeatedly assert that "the relevant inquiry for determining willfulness is the defaulting party's actions *after* it became aware of the existence of the litigation or entry of default." Appellants Br. at 17 (citing *In re FKF 3, LLC*, 501 B.R. 491, 502 (Bankr. S.D.N.Y. 2013)). But this argument is unavailing because, as discussed *supra*, the Lamp Entities have utterly failed to establish that they did not receive actual notice at or about the time they were served through their registered agent or at their shared business address. Having failed to establish that they did not receive timely notice of the Adversary Proceeding, nor adequately explained their failure to timely respond, they cannot rely upon case law which as a result has no applicability to this case.

In light of all of the foregoing, the Bankruptcy Court's finding that the Lamp Entities received timely notice of the Adversary Proceeding was not clearly erroneous, and the conclusion that their failure to respond was willful accords with applicable law.

Meritorious Defenses

Next, the Lamp Entities argue that the Complaint fails to state an alter ego claim against Lamp Capital and that, as such, the Lamp Entities have presented a meritorious defense to the Trustee's claims. This is a purely legal defense to the Trustee's allegations. The Lamp Entities did not offer any factual defense to the alter ego claim. As discussed below, the Bankruptcy Court properly considered and rejected this argument.

"Without a showing of a meritorious defense to the [p]laintiff's allegations, [a defaulting defendant] cannot prevail on its [m]otion." *In re Bailey's*, 2019 WL 4686560 at *4. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal citations and quotation marks omitted). Neither conclusory denials, nor formulaic recitations of boilerplate defenses, are sufficient on their own. *See Green*, 420 F.3d at 109–110. Indeed, "[a]lthough in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320–21 (2d Cir. 1986).

Here, the Lamp Entities argue that they have raised serious questions regarding the Trustee's ability to establish his alter ago claim against Lamp Capital, and have therefore

demonstrated a meritorious defense.[11]  As discussed, the Lamp Entities do not raise serious, or any, *factual* questions regarding the Trustee's ability to establish his claim.  The Lamp Entities challenge the legal sufficiency of the allegations.  As such, the issue on appeal is whether the Complaint adequately stated an alter ego claim against Lamp Capital, and in particular, whether the Bankruptcy Court properly considered both elements of the reverse veil piercing test under Delaware law.[12]

"Delaware law permits a court to pierce the corporate veil of a company where there is fraud or where it is in fact a mere instrumentality or alter ego of its owner." *In re Broadstripe, LLC*, 444 B.R. 51, 102 (Bankr. D. Del. 2010)  (internal quotations marks and alterations omitted). "To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the companies 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'" *Id.* (quoting *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D.Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991)).

---

[11]  The First Claim of the Trustee's Complaint seeks a declaratory judgment that Lamp Capital is the Debtor's alter ego.  The Trustee's Second Claim seeks a declaratory judgment that Lamp Capital is equitably owned by the Debtor.  In their appeal, the Lamp Entities analyze only the First Claim, and do not contest the Bankruptcy Court's determination that "the Lamp Entities do not argue [the Second Claim] was insufficiently plead."  Moreover, the Trustee asserts that the same facts supporting its alter ego claim also support its equitable ownership claim.  *See* Appellee Br. at 31 n.10.

[12]  The Lamp Entities urge that the Bankruptcy Court erred in emphasizing the Lamp Entities' reliance solely on legal arguments, as opposed to putting forth factual material to create an issue for a factfinder.  But the Lamp Entities' mischaracterize or misconstrue the Default Decision.  The Bankruptcy Court did not, as posited by the Lamp Entities, determine that the Trustee's purported failure to state a claim could not constitute a meritorious defense for purposes of the Rule 55(c) analysis.  Rather, the Bankruptcy Court merely observed that the sufficiency of the pleadings could be (and indeed, must be) determined in evaluating whether a default judgment could enter, and then proceeded to reject the argument in the context of that assessment. Indeed, regardless of whether the Lamp Entities had demonstrated that the Default Entry should be set aside, if the Trustee failed to adequately state an alter ego claim, no default judgment could enter.  *See Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196 (KMK), 2022 WL 1266209, at *4 (S.D.N.Y. Apr. 28, 2022) ("[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant, regardless of whether the defendant filed a prompt response, or any response at all.") (citation omitted).

*Single Economic Unit*

"The Third Circuit uses the following multi-factor test for determining whether a 'single economic entity' exists between entities: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *In re Furniture Factory Ultimate Holding, L.P.*, No. 20-12816 (JKS), 2023 WL 5662747, at *31 (Bankr. D. Del. Aug. 31, 2023) (quoting *In re Broadstripe*, 444 B.R. at 102). "However, while no single factor justifies a decision to disregard the corporate entity, some combination of the above is required . . ." *Id.*

In the Default Decision, the Bankruptcy Court conducted the foregoing multi-factor test, emphasizing the allegations set forth at paragraphs 18 through 33 of the Complaint, namely, that Lamp Capital "(a) was formed by the Debtor, (b) provides funding for the Debtor's expenses, (c) is staffed by employees of the Debtor, and (d) shares an office address with other entities associated with the Debtor and has no independent business purpose or source of funds." These allegations—which are deemed admitted—adequately support the inference that the Debtor and Lamp Capital operated as a single economic unit. Indeed, the Court finds that this aspect of the Default Decision is based on an accurate view of the law and a reasonable assessment of the allegations, and is plainly "located within the range of permissible decisions." *See In re Sims*, 534 F.3d at 132.

The Lamp Entities cite *In re Buckhead Am. Corp.* in support of their argument that the nature and extent of the dominion and control exercised between the Debtor and Lamp Capital is a question of fact that should not be resolved on the pleadings. 178 B.R. 956, 959 (D. Del. 1994). *In re Buckhead* is inapposite and in fact, supports the Bankruptcy Court's conclusion. There, the

court denied a motion to dismiss an alter ego claim finding that the allegations were sufficient to plausibly allege an alter ego theory and that the case would proceed to discovery and an ultimate determination as to the accuracy (as opposed to the adequacy) of the allegations. *Id.* Whereas here, the allegations were *deemed admitted* by virtue of the default. *See Vera*, 946 F.3d at 135. There is a fundamental difference between "deemed admitted" for default judgment purposes and "taken as true" for motion to dismiss purposes. And the Court again observes that the Lamp Entities had an opportunity to assert a fact-based defense, or otherwise attempt to dispute the Trustee's allegations regarding, *e.g.*, undercapitalization, corporate formalities, solvency, and the like. Instead, the Lamp Entities challenged only the sufficiency of the Trustee's allegations, which the Bankruptcy Court considered and rejected in accordance with applicable law.

*Fraud or Similar Injustice*

"Merely presenting evidence of dominion or control . . . , without evidence of fraud or similar injustice, will not support alter ego liability." *In re Opus E., LLC*, 528 B.R. 30, 64–65 (Bankr. D. Del. 2015) (citation omitted), *aff'd sub nom.*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom.* 698 F. App'x 711 (3d Cir. 2017). Thus, as to the second prong of his alter ego claim, the Trustee must have sufficiently alleged that the Debtor used Lamp Capital's corporate form to "defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law." *Id.* "The fraud or injustice that must be demonstrated in order to pierce a corporate veil must 'be found in the defendants' use of the corporate form.'" *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 473 (D. Del. 2010) (quoting *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003)).

The Bankruptcy Court concluded that the Complaint plausibly alleged that Lamp Capital's corporate form served to shield the Debtor's assets from his creditors, given that: (a) Lamp Capital

had no business purpose or existence other than pooling the Debtor's liquid assets, which were siphoned to pay his expenses without consideration; and (b) its indirect, record owner was the Debtor's son (as the sole shareholder of ITM). The Lamp Entities argue that these allegations do not support an inference of fraud or injustice caused by Lamp Capital's corporate structure. But the Court agrees with the Trustee that these allegations plausibly support the belief that Lamp Capital's corporate form was utilized by the Debtor to perpetrate a fraud and injustice. *See, e.g.*, *Blair*, 720 F. Supp. 2d at 473 (plaintiffs sufficiently pleaded element of fraud or injustice by alleging that the defendant-parent company misdirected funds, exercised crippling control, and purposely siphoned profits from subsidiaries).

### Prejudice

Lastly, the Court turns to the issue of prejudice to the Trustee. The Lamp Entities argue that the Bankruptcy Court erred in concluding that the Trustee would be prejudiced if the default were set aside, and emphasize that delay alone does not constitute prejudice. The Trustee contends that, under the circumstances, the Court need not undertake the prejudice inquiry at all, and that even if it did, the Bankruptcy Court's finding of prejudice was not an abuse of discretion. The Court agrees with the Trustee.

It is well-established that the Court "need not reach the question of whether the plaintiff would suffer prejudice [if it is] 'persuaded that the default was willful and . . . [is] unpersuaded that the defaulting party has a meritorious defense.'" *Bricklayers*, 779 F.3d at 187 (citing *McNulty*, 137 F.3d at 738); *see also Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Abalene Decorating Inc.*, No. 20-CV-2559 (PKC), 2021 WL 1393455, at *5 (S.D.N.Y. Apr. 13, 2021) ("Because the Court concludes that [the defaulting party] willfully defaulted and has not

presented a meritorious defense, it need not reach the issue of prejudice."), *aff'd sub nom.*, No. 21-1037-CV, 2022 WL 1448205 (2d Cir. May 9, 2022). Here, the Bankruptcy Court had "no doubt" that the Lamp Entities' default was willful, and that they had not presented any meritorious defense. And as set forth *supra*, this Court has concluded that the Bankruptcy Court, in so finding, did not abuse its discretion. As such, this Court need not—and does not—reach the Bankruptcy Court's determination regarding whether the Trustee would be cognizably prejudiced if the Default Entry were set aside.

For all of the foregoing reasons, the Bankruptcy Court's factual findings were not clearly erroneous; the Bankruptcy Court applied correct legal principles and ultimately acted well within its discretion in denying the Lamp Entities' Motion to Set Aside Default.

**Conclusion**

For all of the foregoing reasons, the order of the Bankruptcy Court granting the Trustee's Motion for Default Judgment and denying the Lamp Entities' Cross-Motion to Set Aside Default is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of March 2025.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE